UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL WALTER PAYETTE,

        Plaintiff,                              Case No. 2:10-cv-256

v.                                              Honorable R. Allan Edgar

DENISE GERTH, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On October 6, 2010, this Court ordered service of Plaintiff's complaint on Defendants Denise Gerth, Denver McBurney, Lyle Rutter, Daniel Lesatz, Jeffrey Contreras, David Bergh, and Patricia Caruso. On January 24, 2011, Defendants Denise Gerth, Denver McBurney, Lyle Rutter, Daniel Lesatz, Jeffrey Contreras, and Patricia Caruso filed a motion for summary judgment (docket #8) on the ground that Plaintiff failed to exhaust his available administrative remedies. On February 8, 2011, Defendant David Bergh also filed a motion for summary judgment (docket #11) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket #14) on or about February 15, 2011. Upon review, I recommend that Defendants' motions for summary judgment be granted.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th

Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains

2

evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

In his complaint, Plaintiff alleges that on August 18, 2008, Defendant Gerth refused to process twenty-two pieces of expedited legal mail and read four of the letters Plaintiff was attempting to send. Three of these letters were addressed to the American Civil Liberties Union (ACLU) and one was addressed to an attorney. Plaintiff contends that Defendant Gerth refused to process Plaintiff's outgoing mail because the letters contained a complaint that he was sexually touched by an Alger corrections officer during a pat-down search. Defendant Gerth refused to give Plaintiff any of the expedited mail forms he requested and gave him only five envelopes, despite the fact that he needed twenty envelopes. Plaintiff states that he was able to grab three forms for expedited legal mail as he was leaving Defendant Gerth's office and was able to obtain seventeen more forms from a corrections officer. Plaintiff wrote letters to Defendants Caruso, Bergh, Lesatz, Rutter, Contreras, and McBurney complaining of Defendant Gerth's conduct, but received no response.

Plaintiff also contends that on August 19, 2008, Defendant Gerth refused to accept eighteen completed expedited mail request forms. Plaintiff asserts that he once again wrote letters of complaint to Defendants Caruso, Bergh, Rutter, Contreras, and McBurney but failed to hear back from them. Plaintiff alleges that on eight separate occasions in August of 2008, he placed expedited legal mail requests in the Resident Unit Manager's mailbox, but that none of the requests were

3

processed. Plaintiff claims Defendants McBurney and Gerth were conspiring to prevent Plaintiff from complaining about the alleged sexual touching. He is suing Defendants in their official capacity for declaratory relief and in their personal capacity for monetary damages.

As noted above, Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The

Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within ninety calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

On August 28, 2008, Plaintiff asked for grievance forms so he could exhaust his administrative remedies. The Grievance Coordinator, Wayne Trierweiler, responded immediately but told Plaintiff he would have to rewrite his complaint on a grievance form. (Def. Ex. 1, ¶ 7). Mr. Trierweiler also told Plaintiff that he would have to attach four copies of any additional pages.

5

Instead of attaching the copies as Mr. Trierweiler requested, Plaintiff complained that he could not provide any copies because he could not get photocopies at the library and he would have to handwrite copies with carbon paper. Plaintiff claims that he had no time to do that and that by making him handwrite the copies Defendants were attempting to "thwart" the grievance process. (Cplt, ¶ 13).

Plaintiff did not prepare and file the appropriate number of copies of his grievance. Plaintiff maintains that requiring him to file copies was unreasonable, time consuming, and was designed to "thwart" the grievance process. "We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Michigan prison administrators are required to process thousands of grievances a year. Establishing a procedure that must be followed and requiring a certain number of copies is a reasonable exercise of their discretion. This Court requires prisoners to file sufficient copies of civil rights complaints to allow for service on the defendants. The Sixth Circuit Court of Appeals requires an original and three copies of motions and an original and six copies of the final brief. *See* http://www.circ6.dcn/intranet/clerks_office/-clerks_office.html (copy attached).

Plaintiff was on modified access status for his "continued abuse of the grievance process." (Def. Ex. 1, ¶ 3). While a prisoner is on modified access status the prisoner may only obtain grievance forms through the Step I Grievance Coordinator. A Step I form is only provided of the Grievance Coordinator feels that the issue is grievable. Grievance Coordinator Trierweiler did in fact provide Plaintiff with a Step I grievance form. However, Plaintiff failed to correctly complete the form. Plaintiff merely attached one copy of his original grievance request statement

and failed to provide the requisite four copies of the additional pages. (Def. Ex. 1, ¶9). Mr. Trierweiler returned the incomplete grievance form to Plaintiff, attaching a copy of Section R of the grievance policy and a note explaining what the errors were and to resubmit the grievance after making corrections. (Def. Ex. 1, ¶ 7). Plaintiff never returned the corrected grievance. Because Plaintiff did not comply with MDOC's grievance policy, he did not exhaust all of his administrative remedies; therefore, this complaint should be dismissed.

For the foregoing reasons, I recommend that the motions for summary judgment filed by Defendants Gerth, Caruso, Lesatz, Rutter, Contreras, McBurney, and Bergh (docket #8 and #11) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Any objections to this Report and Recommendation must be filed and served within fourteen (14) days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further

right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 14, 2011